JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTO DAVIS, individually, and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>EMPIRE CHAUFFEUR SERVICE, LTD., a California corporation; CLS TRANSPORTATION LOS ANGELES, LLC; a California corporation; and DOES 1 through 10, inclusive,<br><br>　　　　　　　　Defendants. | Case No.: 2:23–cv–07968–MEMF–SSC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR JUDICIAL NOTICE [ECF NO. 12, 12-3]** |

　　　Before the Court is a Motion to Remand the Action to State Court (ECF No. 12) and Request for Judicial Notice (ECF No. 12-3) filed by Plaintiff Roberto Davis. For the reasons stated herein, the Court GRANTS the Motion.

/ / /

/ / /

1

# BACKGROUND

## I. Factual Background

Plaintiff Roberto Davis ("Davis") is an individual who resides in Los Angeles County. Compl. ¶ 7. Defendant Empire Chauffeur Service, LTD., and Defendant CLS Transportation Los Angeles, LLC ("CLS") (collectively, "Defendants") are entities that operate in Los Angeles County. *Id*. ¶ 9.

Defendants employed Davis from 2021 to 2023. *Id*. ¶ 7. Defendants committed various violations of employment law while employing Davis, including, at times, failing to pay overtime, failing to pay for all hours worked, failing to provide meal breaks, failing to authorize rest breaks, failing to timely pay, and failing to provide wage statements. *Id*. ¶¶ 13–21.

## II. Procedural History

Davis filed suit in Los Angeles County Superior Court on June 30, 2023. *See* ECF No. 1 ("Notice of Removal" or "NOR") at 1. Davis brings nine causes of action based on California law: (1) failure to pay minimum and straight time wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay final wages at termination; (6) failure to provide accurate itemized wage statements; (7) failure to indemnify employees for business expenses; (8) failure to produce requested employment records; and (9) unfair business practices. *See* Compl. ¶¶ 32–104. Davis also seeks attorney's fees. *See id.* at Prayer for Relief.

Defendants removed the action to this Court on September 22, 2023. *See* NOR. Alongside their Notice of Removal, Defendants filed a declaration from Joey Phelps, Chief Operating Officer for CLS, with facts that purportedly support the basis for federal jurisdiction, among other filings. *See* ECF No. 1-11 ("Phelps Declaration" or "Phelps Decl.")

Davis filed this Motion to Remand on October 20, 2023. ECF No. 12 ("Motion" or Mot."). Davis also filed a Request for Judicial Notice in Support of the Motion. ECF No. 12-3 ("RJN"). On December 11, 2023, Davis filed a Notice of Non-Receipt of Opposition to Davis's Motion. ECF No. 14 ("Notice of Non-Receipt"). On December 12, 2023, Defendants promptly filed a response to the Notice of Non-Receipt, citing an administrative error for the absence of an Opposition to the Motion.

ECF No. 15. That same day, Davis filed objections to Defendants' response, asserting that Defendants failed to comply with Civil Local Rules 7-3 and 7-19. ECF No. 16. However, on December 20, 2023, the Court ordered that Defendants were permitted to file an Opposition. ECF No. 17. Defendants filed their Opposition on December 22, 2023. ECF No. 18 ("Opposition" or "Opp'n"). On January 12, 2024, Davis filed an amended Reply in support of the Motion. ECF No. 23 ("Reply").

The Court held a hearing on the Motion on March 14, 2024.

## REQUEST FOR JUDICIAL NOTICE

### I. Applicable Law

A court may take judicial notice of facts not subject to reasonable dispute where the facts "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may take judicial notice of "undisputed matters of public record," but generally may not take judicial notice of "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Public records, including documents on file in federal court, are appropriate for judicial notice. *See Harris v. County of Orange*, 682 F.3d 1126, 1132–33 (9th Cir. 2012); *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).

### II. Discussion

Here, Davis requests that the Court take judicial notice of various complaints filed in other employment cases. RJN at 1. The Court concludes that these public records are appropriate materials for judicial notice and takes judicial notice of the existence of the documents; however, the Court does not take judicial notice of any disputed facts therein. *See Harris*, 682 F.3d at 1132; *Lee*, 250 F.3d at 690.

## MOTION TO DISMISS

### I. Applicable Law

"Federal courts are courts of limited jurisdiction," and can only hear cases where there is a valid basis for federal jurisdiction. *Richardson v. United States*, 943 F.2d 1107, 1112 (9th Cir. 1991).

Although there are several possible bases for federal jurisdiction, only one is relevant to this Order: the diversity jurisdiction provisions of the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. § 1332(d)(2). Federal district courts have jurisdiction over class action lawsuits where the amount in controversy exceeds $5,000,000 and minimal diversity requirements are met.[1] *See id.*

When a plaintiff files an action in state court over which federal courts might have jurisdiction, the defendant may remove the action to federal court. *See* 28 U.S.C. § 1446. When the defendant does so pursuant to CAFA, the defendant must make a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). If the plaintiff contests whether the amount of controversy is sufficient for jurisdiction, "evidence establishing the amount is required." *Id.*

The defendant who removed the case bears the burden "to show the amount in controversy by a preponderance of the evidence." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022). However, although there is a presumption against removal in the context of some other bases for jurisdiction, there is "no antiremoval presumption" in cases invoking CAFA jurisdiction. *Dart Cherokee*, 574 U.S. at 89. In other words, the Defendant bears the burden of showing removal is proper, but there is no "thumb on the scale against removal." *Jauregui*, 28 F.4th at 994.

Rather, the procedure is that "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (internal quotation marks omitted)).[2] In determining the amount in controversy, the defendant may rely on "a

---

[1] The diversity requirements of CAFA are not at issue in this Order, as all parties appear to agree that these requirements are met, and so the Court will not explain these requirements in detail. *See* 28 U.S.C. §§ 1332(d)(2)(A)–(C).

[2] Both Davis and Defendants discussed whether the challenge to jurisdiction here should be construed as facial or factual. *See* Opp'n at 6–7; Reply at 2–3. This distinction is not relevant when analyzing removal pursuant to CAFA. *See Dart Cherokee*, 574 U.S. at 84–96 (laying out standard for CAFA removal challenges and not mentioning factual vs. facial distinction); *Jauregui*, 28 F.4th at 992–96 (same).

chain of reasoning that includes assumptions." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Id.* But, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197.

It is settled law in the Ninth Circuit that CAFA's provisions should be interpreted broadly with a "strong preference" for class actions to be heard in federal court *when properly removed*. *Jauregui*, 28 F.4th at 993. And in the early stages of litigation, a defendant has no choice but to rely on assumptions when calculating an amount in controversy using the plaintiff's complaint before resolving any disputes over key facts. *Id.* As a result, it is inappropriate to demand exact certainty from a defendant in their calculations of the amount in controversy. *Id.* However, "[w]here a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden." *Id.* at 996.

On the other hand, where "a defendant's assumption is rejected is because a different, better assumption is identified . . . the district court should consider the claim under the better assumption—not just zero-out the claim." *Id.* In those circumstances, the Court should identify, applying a preponderance of the evidence standard, the best possible assumptions, and use these to calculate the total amount in controversy. *See id.*

If the total amount is found to be greater than $5,000,000, the action will remain in federal court. *See* 28 U.S.C. § 1332(d)(2). If not, it should be remanded to state court. *See id.*

**II.    Discussion**

Defendants estimated the amount in controversy by first determining the universe of employees covered by the relevant time period—based upon their business records—then making certain assumptions about the violation rates for each of the Davis's causes of actions—based upon the language in the Compl. From there, they applied simple arithmetic to arrive at the final estimate.

As discussed below, the calculation regarding the universe of employees is supported by substantial evidence, but the assumptions about the violation rates are not reasonable. Defendants rely heavily on *Salter v. Quality Carriers, Inc.*, 974 F.3d 959 (9th Cir. 2020), for the proposition that

Davis may not obtain a remand simply based upon the failure of the Defendants to present summary-judgment-type evidence in their Notice of Removal. *See* Opp'n at 5–8. This is true, but that is not what Davis attempts to do here. And for that reason, *Salter* is inapposite. In *Salter*, the plaintiff (Salter) did not challenge the assumptions made by the defendant (Quality). *See Salter*, 974 F.3d at 964–965 ("Salter did not assert that Quality misinterpreted the thrust of his complaint and did not offer any declaration or evidence that challenged the factual bases of Quality's plausible allegations . . . Salter, however, has not challenged any of Quality's essential assumptions or shown that any one was unreasonable.")

Here, Davis has challenged the Defendants' assumptions, which requires Defendants to come forward with summary-judgment-type evidence and "show the amount in controversy by a preponderance of the evidence." *See Jauregui*, 28 F.4th at 994; *see also Calderon, et al. v. Bio-Medical Applications of Mission Hills, Inc. dba Fresenius Kidney care Mission Hills*, 2023 WL 6130524, at *3 (C.D. Cal. Sept. 18, 2023).

### A. Defendants' calculations regarding the universe of possible Class Members are supported by substantial evidence.

Defendants based their estimate of the amount in controversy in part on certain facts regarding the universe of possible Class Members. The Court finds that these proposed facts are based on appropriate, "summary-judgment-type" evidence. Those facts are as follows:

(1) Between June 30, 2019, and September 8, 2023, Defendants employed approximately 362 non-exempt employees in California. *See* NOR at 5 (citing Phelps Decl. ¶ 12(a). These employees were paid an "average hourly rate [of] $17.35" and worked "for approximately 26,336 workweeks." *Id*. at 11 (citing Phelps Decl. ¶ 12(a));

(2) Between June 30, 2020, and September 8, 2023, Defendants employed approximately 271 non-exempt employees in California. *See* Phelps Decl. ¶ 12(b)). During this period, 100 non-exempt employees terminated their employment with Defendants. *See* NOR at 16 (citing Phelps Decl. ¶ 12(b)). These employees were paid an "average hourly rate [of] $17.28." *Id*.; and

(3) Between June 30, 2022, and September 8, 2023, Defendants employed 235 non-exempt employees in California for approximately 5,159 pay periods. *See* NOR at 17 (citing Phelps Decl. ¶ 12(c)).

These facts are well supported by competent evidence—namely a declaration under penalty of perjury by an individual who is familiar with the operations of the Defendants and their business records and provided his declaration based upon his personal knowledge.

**B. Defendants' assumptions regarding amount in controversy are unreasonable and therefore they have failed to show that the amount in controversy is over $5,000,000.**

Having determined the full universe of possible Class Members, Defendants proceed to make certain assumptions about the violation rate—that is, *how many* employees suffered a given violation, and *how often* those employees suffered that violation.

Defendants argue that they may rely on several sources to meet the burden of removal. *See* Opp'n at 4. Specifically, Defendants argue that the language of the allegations set forth in the Complaint coupled with the Phelps Declaration led Defendants to reasonably assume that the amount of controversy meets CAFA's removal threshold. *See id*. at 4–5. However, the Court finds that the language pointed to by the Defendants is too sandy a foundation upon which to build their assumptions, and therefore they have failed to meet their burden.

For the first cause of action (Failure to Pay Minimum and Straight Time Wages), Defendants seem to assume a 100% violation rate, that is, that 100% of the employees failed to receive straight time wages. *See id*. at 16. Thus, Defendants assumed that all 362 employees failed to receive straight time wages. Defendants then assumed that all 362 employees failed to receive 15 minutes in straight time wages per workday (.25 hours per day or 1.25 hours per week). *See id*. Defendants then multiplied the number of workweeks (26,336) by the 1.25 hours of unpaid wages per week ($21.69 or 1.25 x $17.35), and then doubled this amount to account for liquidated damages warranted by Cal. Lab. Code §1194. *See id*. at 14, 16. This resulted in a total amount in controversy of $1,142,324 for the first cause of action. *See id*. at 16.

For the second cause of action (Failure to Pay Overtime Wages), Defendants again assumed 100% of employees suffered overtime violations. *See id*. Defendants then assumed that for all 362

employees who suffered overtime violations, the average frequency was 15 minutes per day (.25 hours per day or 1.25 hours per week). *See id*. Defendants multiplied the number of workweeks (26,336) by the 1.25 hours unpaid overtime wages per week ($32.53 or 1.25 x $26.03 or 1.25 x $17.35 x 1.5). *See id*. This resulted in a total amount in controversy of $856,743 for the second cause of action.

For the third cause of action (Failure to Provide Meal Periods), Defendants appear to assume that 100% of employees were affected. Defendants assumed two missed meal violations per week. *See id*. at 19. Defendants multiplied the number of workweeks (26,336) by the penalty for two missed meal periods ($34.70 or 2 x $17.35). *See id*. This resulted in a total amount in controversy of $913,859.20 for the third cause of action. *See id*.

For the fourth cause of action (Failure to Authorize and Permit Rest Periods), Defendants appear to assume that 100% of employees were affected. Defendants assumed two missed rest period violations per week *See id*. Defendants multiplied the number of workweeks (26,336) by the penalty for two missed meal periods ($34.70 or 2 x $17.35). *See id*. This resulted in a total amount in controversy of $913,859.20 for the fourth cause of action. *See id*.

For the fifth cause of action (Failure to Timely Pay Final Wages at Termination) Defendants assume a 100% violation rate, that is, that all 100 terminated employees failed to receive their final wages at the time of their respective terminations. *See id*. at 20. Defendants also assume, pursuant to California Labor Code section 203, that each terminated employee is entitled to recover 30 days' worth of daily wages in waiting time penalties. *See id*. Thus, Defendants multiplied the number of terminated employees (100) by 30 days, and then multiplied that amount by the average amount of daily wages ($138.24 or 8 x $17.28). *See id*. This resulted in a total amount in controversy of $414,720 for the fifth cause of action. *See id*.

For the sixth cause of action (Failure to Provide Accurate Itemized Wage Statements) Defendants assume a 100% violation rate for all 235 employees employed between June 30, 2022, and September 8, 2023. *See id*. at 21. Defendants assume that all 235 employees failed to receive accurate, itemized wage statements for at least 5,159 biweekly pay periods. *See id*. Defendants then assumed that each employee was employed for an average number of 21 pay periods. *See id*.

1  Defendants, pursuant to Cal. Lab. Code §226, then assumed that the average penalty for each
2  employee was $2,050. *See id.* Defendants calculated this amount by multiplying the first pay-period
3  violation by $50 and multiplying the subsequent 20 pay-period violations by $100 ([1 x $50] + [20 x
4  $100]). *See id.* Defendants then multiplied this amount by the number of affected employees (235).
5  *See id.* This resulted in a total amount in controversy of $481,750 for the sixth cause of action. *See*
6  *id.*

For the seventh cause of action (Failure to Indemnify Employees for Business Expenses) Defendants assume a 100% violation rate, that is, that all 362 employees failed to receive reimbursements for business expenses. *See id.* at 22. Defendants assume that each employee failed to receive reimbursement for an average amount of $15 per workweek. *See id.* Defendants then multiplied this amount by the number of workweeks (26,336). *See id.* This resulted in a total amount of controversy of $395,040 for the seventh cause of action. *See id.*

Lastly, Defendants argue that the Court must include prospective attorneys' fees in the assessment of the amount in controversy. *See id.* Defendants assume that the prospective attorneys' fees would be at least 25% of the alleged damages. *See id.* Defendants then assumed that the amount of controversy is $5,118,295.40. *See id.* This resulted in a total amount of $1,279,573.85 in prospective attorneys' fees. *See id.*

The assumptions and calculations above are summarized in the table below. Defendants did not provide detailed estimates for other causes of action in their Notice of Removal, having shown that the total for these seven claims is over the $5,000,000 threshold per Defendants' estimates.

| Davis's Alleged Claim | Calculations | Total Amount in Controversy |
|---|---|---|
| Failure to Pay Minimum and Straight Time Wages | 26,336 workweeks x 1.25 hours x $17.35 x 2 for liquidated damages | $1,142,324.00 |
| Failure to Pay Overtime Wages | 26,336 workweeks x 1.25 hours x $26.03 | $856,743.00 |
| Failure to Provide Meal Periods | 26,336 workweeks x 2 missed meal periods x $17.35 | $913,859.20 |
| Failure to Authorize and Permit Rest Periods | 26,336 workweeks x 2 missed rest periods x $17.35 | $913,859.20 |
| Failure to Timely Pay Final Wages at Termination | 100 terminated employees x 30 days x $138.24 in daily wages | $414,720.00 |
| Failure to Provide Accurate Itemized Wage Statements | 235 employees x $2,050 in penalties | $481,750.00 |

| Failure to Indemnify Employees for Business Expenses | 26,336 workweeks x $15 in unreimbursed business expenses | $395,040.00 |
|---|---|---|
| Attorneys' Fees | .25 prospective attorneys' fees x $5,118,295.40 | $1,279,573.85 |
| Total | | $6,397,869.25 |

Defendants contend that both sets of assumptions—how many employees were affected and how often the affected employees were affected—are based on the language of the Complaint. Specifically, the Defendants point to scattered references to "policies" or "practice" as well as particular language used to describe the frequency and severity of certain violations. With respect to the "policy" or "practice" language, the Court does not find that this language supports the assumptions. For example, Defendants emphasized that their alleged unlawful policies were uniformly applicable to the entire settlement class. *See, e.g.*, Opp'n at 11, 13. However, that something is a policy or practice does not provide any indication of how *many* employees it affects or how *often* it affects them. In addition, the Court notes that many of the uses of the term "practice" are used as part of the phrase "unfair business practices," a description of the seventh cause of action under Business & Professions Code Section 17200. *See, e.g.*, Compl. ¶¶ 91, 98–102. Similarly, looking at the language of the Complaint in context, it is not clear that Davis is alleging that Defendants made certain violations as frequently and severely as Defendants assume. For example, Defendants assumed that each and every employee failed to receive 15 minutes of unpaid straight time and 15 minutes of unpaid overtime every workday. This was allegedly "based on Plaintiff's allegations" that Davis worked "off the clock uncompensated" and that "much of [his] unpaid work should have been paid at the overtime rate." *See, e.g.*, Opp'n at 15; Compl. ¶ 15. As another example, Defendants assumed that each and every employee missed two rest periods every workweek. This was similarly allegedly based on Davis's allegations that Defendants "failed to authorize Plaintiff and the Class, or *some of them*, to take rest breaks" and that Davis's experience was "typical and illustrative." *See, e.g.*, Opp'n at 17; Compl. ¶¶ 14, 17, 55–58. But these assumptions are not based on upon Davis's allegations because the language in the allegations says nothing about which class members worked off the clock and how often and which class members Defendants did not authorize breaks and how often.

Davis contests both sets of two key assumptions underlying the analysis above: the assumption of a 100% affected employee rate, and the assumptions regarding the frequency of violations (1.25 hours of unpaid straight time per week, 1.25 hours of overtime per week, two missed meal periods per week, two missed rest periods per week, $15 of unreimbursed business expenses, $4,147.20 in waiting-time penalties and $2,050 for wage statement violations). *See* Mot. at 8–17. Davis points to limiting language in the Compl. which the Defendants would have this Court disregard. The rest break allegations quoted above provide a salient example:

> Despite these legal requirements, Defendants *at times* failed to provide Plaintiff and the Class, *or some of them*, to take rest breaks, regardless of whether employees worked more than four hours in a workday. By their failure to permit and authorize Plaintiff and the Class to take rest periods as alleged above (or due to the fact that Defendants made it impossible or impracticable to take these uninterrupted rest periods), Defendants willfully violated the processions of California Labor Code § 226.7 and the applicable Wage Orders.

Compl. ¶ 57 (emphasis added). The language "at times" and "some of them," which appears in all of the claims at issue clearly limit the allegations regarding how many employees were affected and how often they were affected. But that language does not support the Defendants' assumptions because the language is not susceptible of a numerical quantification. Defendants' response is that "Plaintiff cannot have it both ways by asserting universal violations, and then disavowing the scope of those allegations to attempt to avoid federal removal jurisdiction based upon those same allegations." Opp. at 12. But Defendants are incorrect—Davis has not asserted "universal" violations; he has repeatedly provided limiting language suggesting just the opposite. And Defendants' argument that his limiting language contradicts the class allegations is simply wrong. Certainly, Davis can meet the class requirements without alleging that the violations alleged were experienced by every single employee for the entire time period covered by the lawsuit. The Defendants' theory is contrary to the law which places the burden on the Defendants to show the amount of controversy, not stop at showing that the matter is a class action. What the law demands—and therefore this Court must require—is a reasonable basis for the assumptions made. "Policy," "practice," "at times," and "some of them" cannot reasonably be read as 100% of

employees, 1.25 hours of overtime per week, two missed meal periods per week, and two missed rest periods per week.

Put another way, the core allegations are open to multiple interpretations, and the Defendants have pointed to nothing making their interpretation more likely than not, which is their burden. For example, with respect to the second cause of action, the Compl. alleges that "*[a]t all time* relevant hereto, Plaintiff and the Class, or *some of them*, have *at times* worked more than eight hours in a workday," and "Defendants failed to pay Plaintiff and the Class, or *some of them*, overtime compensation for the hours they worked in excess of the maximum hours permissible by law." Compl. ¶¶ 45 (emphasis added), 46 (emphasis added). The Complaint further alleges that Defendants' failure to keep records make it "difficult to calculate the *full extent* of overtime compensation." *Id.* ¶ 48 (emphasis added). This language is open to multiple interpretations—one could assume that nearly all employees were affected and violations were frequent for those employees, or that only a few employees were affected and violations were rare for those employees. Similarly, for the third cause of action, the Complaint alleges that Defendants "*at times* failed to provide Plaintiff and the Class, or *some of them*, with both meal periods as required by California law." *Id.* ¶ 53 (emphasis added). Again, this language is open to multiple interpretations as to the frequency of violations and number of affected employees. For the fourth cause of the action, the Compl. alleges that Defendants "*at times* failed to authorize Plaintiff and the Class, or *some of them*, to take rest breaks." *Id.* ¶ 57 (emphasis added). This too is susceptible to multiple interpretations as to the frequency of violations and number of affected employees. For the fifth cause of action, the Compl. alleges that Defendants "*at times* failed, and continue to fail, to pay terminated Class members." *Id.* ¶ 61 (emphasis added). This language also lends itself to various interpretations regarding the frequency of violations and number of affected employees.[3]

Although Defendants "must be able to rely on a chain of reasoning that includes assumptions," this is only the case "as long as the reasoning and underlying assumptions are

---

[3] For the sixth and seventh causes of action, Davis's allegations use substantially similar limiting language. *See* Compl. ¶¶ 68, 75-76.

reasonable." *Jauregui*, 28 F.4th at 994. Defendants' underlying assumptions are untethered to the language of the Complaint and therefore unreasonable. Although Defendants claim they are taken from the language of the Complaint, this Court finds that in reality, they are the equivalent of the "speculation" and "assumptions . . . pulled from thin air" that the Ninth Circuit has prohibited. *See Ibarra*, 775 F.3d at 1197, 1199; *see also Calderon, et al.,* 2023 WL 6130524 at *6.

Defendants also argue in their Opposition that the request for attorneys' fees will add 25% to the amount in controversy. *See* Opp'n at 22. Davis disputes that 25% is the correct percentage to add. *See* Reply at 8 ("[A]mple caselaw explicitly rejects a 25% per se rule.") Davis also disputes the base number that 25% will be added to. *See* Reply at 8–9 ("Since Defendants' prior calculations are flawed and lack evidentiary support, determining attorney's fees would also be flawed and inaccurate.") Setting aside whether the 25% is appropriate, because the Court finds the underlying assumptions are unreasonable (in light of the limiting language), the resulting numbers are unsupported.

This Court finds that this case presents the very situation discussed in *Jauregui*: "Where a defendant's assumption is *unreasonable on its face* without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden." *Jauregui*, 28 F.4th at 996.[4]

At the hearing, counsel for Defendants argued that the Court was required under *Jauregui* to identify alternative assumptions and explain why these alternative assumptions were more reasonable than Defendants' provided assumptions. However, *Jauregui* only requires this if Defendants' initial assumptions were reasonable. *See Jauregui*, 28 F.4th at 996. As *Jauregui* makes clear, if the removing party's assumption "is unreasonable on its face without comparison to a better alternative," then the Court may "simply reject that assumption and conclude that the defendant failed to meet its burden," without identifying specific alternative assumptions. *Id.* Defendants further argued that "unreasonable" assumptions as defined by *Jauregui* are only assumptions that

---

[4] Because the Court grants this motion based on the failure to show the amount in controversy by a preponderance of the evidence, the Court need not to discuss whether the local controversy exception would apply. *See* Mot. at 17-20; Opp'n at 23-25.

would be impossible, such as assumptions based on an incorrect minimum wage, as exemplified in *Jauregui*, and would not include any assumptions that are theoretically possible, such as the 100% violation rates assumed here. The Court disagrees with Defendants' interpretation of *Jauregui*—an assumption can be unreasonable on its face even if it is a theoretical possibility. Here, as described above, the Court finds that Defendants' assumptions were unsupported by the Complaint and facially unreasonable, and thus the Court rejects them without needing to identify alternative assumptions.

In sum, the Court finds that because the Defendants' assumptions as to the violation rates are unreasonable, the Court rejects them and concludes that the Defendants have failed to meet their burden of showing by preponderance of the evidence that the amount in controversy is over $5,000,000.

### III. Conclusion

For the foregoing reasons, Davis's Request for Judicial Notice is GRANTED and Davis's Motion to Remand is GRANTED. This matter is remanded to the Los Angeles County Superior Court forthwith.

IT IS SO ORDERED.

Dated: March 18, 2024

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge